| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) SENTENCING MEMORANDUM |
| | ) AND MOTION FOR VARIANCE |
| DEBBIE NORRIS WOODELL, | ) |
|     Defendant. | ) |
| _____ | ) |

COMES NOW the defendant, Debbie Norris Woodell ("Ms. Woodell"), by and through counsel of record, and respectfully moves for a downward variance under 18 U.S.C. § 3553(a). Ms. Woodell accepts responsibility for her conduct, has entered a plea of guilty to Count One, and does not minimize the harm caused to the Dunn Housing Authority or to the U.S. Department of Housing and Urban Development. She respectfully asks the Court to impose a sentence of probation with a period of home detention, or such other sentence below the advisory guideline range as the Court deems just and propper. Respectfully, given Ms. Woodell's age, her serious and chronic medical conditions, the non-violent nature of the offense, and her negligible risk of recidivism, a sentence below the advisory range is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

## BACKGROUND OF MS. WOODELL

Ms. Woodell is 64 years old and was born on September 11, 1961, in Dunn, North Carolina. PSR ¶¶ 3, 40. The PSR reflects a childhood marked by instability: her parents divorced when she was young, her mother suffered from mental-health issues and was frequently hospitalized, and after her father left, her older brother became "the man of the house" and was physically abusive

to her and verbally abusive to her mother. PSR ¶ 41. She was raised primarily by her mother and her sister, who was "like a second mother" to her. PSR ¶ 41.

Ms. Woodell's first marriage, to Roger Dale Norris, lasted from 1978 until their divorce in 1988 and involved domestic violence; her husband was an alcoholic and was physically abusive to their oldest son, and she often attempted to intervene. PSR ¶ 42. That marriage produced two children. PSR ¶ 42. She married John Woodell in 2017, and the PSR reflects that he is very supportive of her. PSR ¶ 42. Ms. Woodell has a strong affiliation with her church and community. PSR ¶ 41.

Ms. Woodell worked at the Dunn Housing Authority from 1989 to 2021, beginning her career as a clerical aide and being promoted over time to the executive-director position in 2014. PSR ¶ 52. She is now retired and lives on retirement and Social Security income, supplemented by part-time bookkeeping work for three local farmers, and she provides approximately $250 per month in assistance to a disabled son. PSR ¶¶ 50, 53. She has no history of substance abuse and submitted to a urinalysis that was negative for controlled substances. PSR ¶ 48.

Ms. Woodell's only prior contacts with the criminal-justice system are decades-old misdemeanors—a 1988 unauthorized-use-of-a-vehicle charge and a series of worthless-check offenses in 1996 and 2006—each of which resulted in zero criminal-history points. PSR ¶¶ 30–36. Her total criminal-history score is zero, placing her in Criminal History Category I. PSR ¶¶ 35–36. As the PSR notes, she had no criminal history at all between 2006 and 2017. PSR ¶ 81.

**MS. WOODELL'S AGE AND HEALTH**

The most significant mitigating features in this case are Ms. Woodell's advanced age and her serious, chronic, and interrelated medical conditions. At 64 years old and retired, Ms. Woodell

2

faces sentencing with a documented medical history that the Bureau of Prisons is poorly positioned to manage.

The PSR reflects that Ms. Woodell suffers from chronic kidney disease, for which she is prescribed Gemtesa, and that she has undergone several surgeries to remove kidney stones and the placement of several stents since 2012, with her most recent kidney stone in 2024. PSR ¶ 44. She remains under the active care of Cape Fear Valley Urology. PSR ¶ 44. She also has a blood-clotting disorder, high blood pressure for which she takes Losartan, and osteoporosis. PSR ¶ 44.

Her records further reflect a history of anemia, arthritis, sinusitis, gastroesophageal reflux disease, and recurrent urinary-tract infections, and she is prescribed pantoprazole. PSR ¶ 45. Critically, Ms. Woodell is allergic to codeine, doxycycline, latex, and silicone adhesive tape—allergies that materially complicate medical and surgical care in a custodial setting. PSR ¶ 45. Her surgical history is extensive, including lower-back surgery, gastric-bypass surgery, a hysterectomy, a cholecystectomy, spinal surgery in 2010, and cataract surgery in 2022. PSR ¶ 45.

Ms. Woodell is also a cancer survivor. She was diagnosed with breast cancer in March 2014, underwent 36 rounds of radiation and a lumpectomy, and took a chemotherapy medication for five years; her cancer is in remission. PSR ¶ 46. She reported during the presentence interview that she has nodules on her lungs, a finding that requires ongoing oncological monitoring. PSR ¶ 46.

Finally, Ms. Woodell has a long-documented history of depression and anxiety, diagnosed in 1994, for which she is prescribed Cymbalta and Clonazepam, and she began mental-health counseling in November 2025. PSR ¶ 47. Her sister believes she suffers from post-traumatic stress disorder related to this offense. PSR ¶ 47.

3

These conditions, in combination, bear directly on the § 3553(a) analysis. The Sentencing Guidelines themselves recognize that an "extraordinary physical impairment may be a reason to depart downward," and expressly contemplate that "home detention may be as efficient as, and less costly than, imprisonment" for a seriously infirm defendant. USSG § 5H1.4. Age, too, "may be relevant" where, individually or in combination with other offender characteristics, it is present to an unusual degree. USSG § 5H1.1. Although these characteristics are constrained as grounds for a formal guideline departure, they are fully available to the Court in the broader § 3553(a) variance analysis. See *Pepper v. United States*, 562 U.S. 476 (2011). The PSR itself identifies Ms. Woodell's "age and retirement status" and her "ongoing medical issues" as factors that may warrant a downward variance. PSR ¶ 81.

## OFFENSE CONDUCT AND GUIDELINES

On January 15, 2026, Ms. Woodell pled guilty, pursuant to a written plea agreement, to Count One, charging Conspiracy to Commit Federal Program Theft in violation of 18 U.S.C. § 371. PSR ¶ 6. The Government agreed to dismiss Counts Two, Three, and Five at sentencing. PSR ¶ 6. The offense conduct involved the issuance of Dunn Housing Authority funds and rent credits, between 2016 and January 2022, to Ms. Woodell's husband and to co-defendant Kevin Lee Tyson for landscaping and maintenance services that were not performed, together with the use of agency credit cards for personal expenses. PSR ¶¶ 10–25. The PSR attributes an intended loss of $246,448.25 and orders restitution to HUD in the amount of $238,448.25. PSR ¶¶ 25, 27, 77. Ms. Woodell does not contest those figures, accepts responsibility, and provided a written statement to the Probation Office accepting responsibility and apologizing for her actions. PSR ¶ 25.

For guideline purposes, the PSR applies USSG §§ 2X1.1 and 2B1.1, begins with a base offense level of 6, and adds 10 levels because the loss exceeded $150,000. PSR ¶ 56. The PSR

then applies a 2-level enhancement for sophisticated means under USSG § 2B1.1(b)(10)(C); a 2-level enhancement for abuse of a position of trust under § 3B1.3; a 2-level aggravating-role enhancement under § 3B1.1(c); and a 2-level obstruction enhancement under § 3C1.1, producing an adjusted offense level of 24. PSR ¶¶ 57–62. After a 3-level reduction for acceptance of responsibility, the total offense level is 21, which, at Criminal History Category I, yields an advisory range of 37 to 46 months. PSR ¶¶ 64–68.

***The Sophisticated-Means Enhancement Should Not Apply.***

Ms. Woodell respectfully objects to the 2-level enhancement for sophisticated means under USSG § 2B1.1(b)(10)(C). PSR ¶ 57. As a threshold matter, this enhancement was not among the sentencing factors to which the parties stipulated in the plea agreement. The parties stipulated only to a 2-level aggravating-role adjustment under § 3B1.1(c), an enhancement for abuse of a position of trust under § 3B1.3, and the maximum reduction for acceptance of responsibility. PSR ¶ 6. The sophisticated-means enhancement was added by the Probation Office, and the defense is free to contest it.

The enhancement does not fit this offense. The Commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and illustrates it with examples such as "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts." USSG § 2B1.1 cmt. n.9(B). The enhancement is reserved for conduct significantly more complex or intricate than the ordinary fraud of its kind. None of the hallmarks of sophistication identified in the Commentary is present here. Ms. Woodell did not employ fictitious entities, corporate shells, offshore accounts, nominee structures, or any specialized technology. She issued checks from an account she already controlled, within her own agency, to her husband and to a friend, supported

by fabricated invoices and forged signatures. That conduct is the ordinary mechanism of an embezzlement-and-kickback scheme, not the "especially complex or especially intricate" concealment the enhancement is meant to capture.

Effective November 1, 2015, the Sentencing Commission narrowed § 2B1.1(b)(10)(C) to reach only "cases in which the defendant intentionally engaged in or caused conduct constituting sophisticated means," focusing the inquiry on the defendant's own conduct rather than on the sophistication of the scheme as a whole. USSG App. C, Amend. 792. Examined on that footing, Ms. Woodell's individual acts—writing checks, preparing invoices, and signing documents—are not complex. Persuasive authority confirms that routine concealment tactics that "do[] not require any particular skill, knowledge, planning, or coordination" do not qualify as sophisticated means. See *United States v. Guldi*, 141 F.4th 435 (2d Cir. 2025).

Two additional points reinforce the objection. First, the conduct the Probation Office characterizes as "sophisticated"—forging signatures and creating false documents—is the same conduct that supports the stipulated abuse-of-trust enhancement under § 3B1.3. Layering an additional sophisticated-means enhancement on the same facts overstates Ms. Woodell's culpability. Second, the scheme was not, in fact, especially well concealed: it unraveled from a single complaint that agency funds had been used to pay a cell-phone bill and from a straightforward review of checks and board-meeting minutes. PSR ¶ 15. A scheme detected through ordinary oversight is not one executed through "especially complex or especially intricate" means.

Under consideration for the most recent amendments to the sentencing guidelines was how to address "sophisticated" conduct across a number of different guidelines. See attached Exhibit

"A". While the guidelines to date have not been amended, the focus of this enhancement remains "especially complex" or "especially intricate", neither of which is present on the facts presented.

Without the sophisticated-means enhancement, the adjusted offense level is 22, and the total offense level after acceptance of responsibility is 19. At Criminal History Category I, the corrected advisory range is 30 to 37 months. The Court should sustain this objection and proceed from the corrected range before considering the variance requested below.

## STATUTORY PENALTIES AND ADVISORY GUIDELINES

The statutory maximum term of imprisonment for Count One is five years, and there is no mandatory minimum. PSR ¶ 67. Since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory only, and the Court must impose a sentence after considering the factors set out in 18 U.S.C. § 3553(a). See also *Gall v. United States*, 552 U.S. 38 (2007). The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and provide the defendant with needed medical care and correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

In conducting that analysis, the Court may consider the full picture of Ms. Woodell's life and characteristics. See *Pepper v. United States*, 562 U.S. 476 (2011); *Concepcion v. United States*, 597 U.S. 481 (2022). Here, that picture includes a 64-year-old first-time felony defendant in Criminal History Category I, serious and chronic medical conditions, a documented history of depression and anxiety, a non-violent offense, full acceptance of responsibility, and the demonstrated ability to pay restitution from the community. Ms. Woodell respectfully requests a downward variance to a non-custodial sentence with appropriate conditions.

7

**ARGUMENT**

*Nature and circumstances of the offense (§ 3553(a)(1))*

The offense is serious, and Ms. Woodell does not minimize it. But the Court may also consider what this case is not. It is a non-violent financial offense. PSR ¶ 81. No one was physically harmed, threatened, or endangered, and the loss has been fully accounted for through a mandatory restitution order. PSR ¶ 77. A below-guideline sentence can fully recognize the seriousness of the breach of public trust while accounting for the offense's non-violent character.

*History and characteristics of the defendant (§ 3553(a)(1))*

Ms. Woodell is a 64-year-old woman in Criminal History Category I whose only prior record consists of minor misdemeanors, the most recent of which is two decades old. PSR ¶¶ 30–36, 81. She worked for more than three decades, is now retired, maintains a supportive marriage and strong church and community ties, and provides financial support to a disabled son. PSR ¶¶ 41–42, 50–53. She accepted responsibility, entered a guilty plea, and apologized in writing for her conduct. PSR ¶ 25. Her history and characteristics support a sentence well below the advisory range.

*Age and health weigh heavily in favor of a variance (§ 3553(a)(1), (a)(2)(D))*

As detailed above, Ms. Woodell's age and serious medical conditions are central to the § 3553(a) analysis. The Sentencing Commission's own research confirms that recidivism declines markedly with age; an infirm 64-year-old retiree in Criminal History Category I presents a negligible risk of reoffending. The § 3553(a)(2)(D) factor—the need to provide the defendant with medical care in the most effective manner—is unusually weighty here. Ms. Woodell requires ongoing care for chronic kidney disease, a blood-clotting disorder, osteoporosis, hypertension, and oncological monitoring of pulmonary nodules, complicated by multiple drug and material

8

allergies. PSR ¶¶ 44–46. That care is most effectively, and least riskily, provided in the community, where she already has established treating providers, rather than through the Bureau of Prisons. The Guidelines expressly recognize that, for a seriously infirm defendant, "home detention may be as efficient as, and less costly than, imprisonment." USSG § 5H1.4.

*Need for the sentence imposed (§ 3553(a)(2))*

A non-custodial sentence with home detention and restitution is a substantial sanction. It restricts Ms. Woodell's liberty, holds her accountable, and sends a clear deterrent message to others who would abuse a position of public trust, while preserving her ability to make restitution and to obtain the medical care she requires. A term of imprisonment would add months of incarceration at significant cost to her health and to the public fisc, without meaningfully improving public safety given her age, infirmity, and negligible recidivism risk.

*Avoiding unwarranted disparities; restitution and fine (§ 3553(a)(6)–(7))*

A below-guideline sentence would not create an unwarranted disparity. It reflects the individualized mitigation present here: advanced age, serious documented illness, Criminal History Category I, full acceptance of responsibility, and concrete medical-care needs. The Court may also note that Ms. Woodell's co-defendant, Kevin Lee Tyson, received a sentence of three years' probation. PSR ¶ 7. Restitution to HUD in the amount of $238,448.25 is mandatory, and Ms. Woodell accepts it; the PSR reflects that she is capable of making restitution on a monthly schedule. PSR ¶¶ 54, 77. The defense further requests that any fine be waived in light of Ms. Woodell's negative net worth and limited monthly cash flow. PSR ¶¶ 53–54.

9

**PRAYER FOR RELIEF**

Respectfully, Ms. Woodell has acknowledged her guilt and accepts responsibility for her actions. Ms. Woodell prays of this Honorable Court that she receives the following:

a. That the Court sustain the defendant's objection to the 2-level sophisticated-means enhancement under USSG § 2B1.1(b)(10)(C), resulting in a total offense level of 19 and an advisory range of 30 to 37 months;

b. A downward variance to a sentence of probation with a period of home detention, or such other sentence below the advisory guideline range as the Court deems just and proper;

d. Any further relief this Honorable Court deems just and proper.

Respectfully submitted this 30th day of June, 2026.

GREENE, WILSON, STYRON & THOMAS

/s/ Kelly L. Greene
KELLY L. GREENE
P.O. Box 1676
New Bern, NC 28563
t: (252) 634-9400
f: (252) 634-3464
kgreene@nctriallawyer.com
N.C. State Bar No.: 26844
Counsel for Defendant

10

**CERTIFICATE OF SERVICE**

I hereby certify that I this day have served a copy of the foregoing pleading upon the other parties to this action electronically as indicated to counsel for said parties, this 30th day of June, 2026.

Adam F. Hulbig, AUSA (via CM/ECF)

GREENE, WILSON, STYRON & THOMAS

/s/ Kelly L. Greene
KELLY L. GREENE
P.O. Box 1676
New Bern, NC 28563
t: (252) 634-9400
f: (252) 634-3464
kgreene@nctriallawyer.com
N.C. State Bar No.: 26844
Counsel for Defendant

11